May it please the Court, my name is Lisa Anderson, and I represent the petitioner, Mr. Gholamreza Bonjnoordi. I would like to reserve, respectfully, five minutes for rebuttal, Your Honor. Your Honor, Mr. Bonjnoordi, Your Honors, Mr. Bonjnoordi is respectfully asking this Court to reverse the decision of the Board of Immigration Appeals, which held that Mr. Bonjnoordi is inadmissible to the United States under Section 212A3B11 of the Immigration and Nationality Act for providing material support to a Tier 3 terrorist organization. In the alternative, Mr. Bonjnoordi would respectfully ask the Court to remand the case for a fair and full determination of whether the activities that he testified to, such as passing out flyers, amounted to material support, and that he knew or should have known that the MEK was a terrorist organization, a Tier 3 terrorist organization, during the years with which he was affiliated with it. Your Honor, I think it's very important that we establish the parameters of the facts in this case. In this case, it was initially heard in 1995. At that time, Mr. Bonjnoordi testified that he was a member of the MEK, and the Court found that they found no evidence that he was a member of the Mujahideen, then or ever. The service in its brief to the Board agreed. He was never a member of the Mujahideen. The Board sustained that, saying, in fact, it looks like he was in France during these years, that he says that he was a member of the Mujahideen. Years later, he became eligible for suspension of deportation, adjustment of status, and the case was remanded. At that time, the judge took testimony to establish whether or not he had ever been affiliated with the Mujahideen. He did testify that he had passed out flyers, that he had had some minor affiliation. He had made some films, some anti-regime films at the time. Iran was run by a tyrannical monarchy. And the judge found, no, he did not engage in any kind of activities. Not only was it not a Tier 1 organization during the years that he was affiliated with it, which it was not, but it was not a Tier 3 organization either, that none of the activities that he had engaged in would be considered terrorist activities. Again, it went to the Board, and the Board said that they needed to clear a finding on credibility, in light of the fact that in 1995, he had been found to be completely incredible on the issue of his membership in the Mujahideen. It went back again. And at that point, the judge took a little bit more, or relied on the testimony from 2003, and piecing together the evidence made this very unusual credibility finding, saying that he determined that the 2003 evidence could be admitted as a statement against interest under the hearsay exception, and a completely illogical finding, but found that that 2003 testimony was nonetheless credible. He said he would issue a written decision. He did so. In that, he found that he was inadmissible to the United States, but he never indicated whether as a Tier 1, a Tier 2, a Tier 3. There was no indication. The petitioner was never put on notice, did he? There was never an opportunity for him to establish whether or not he was aware that the activities of the MEK made it a terrorist organization at the time, or whether or not the activities that he engaged in amounted to material support. The judge in that case appeared to go back to the 1995 impermissibly. The judge who heard that 1995 evidence, when he was standing before him, the person in the best situation to consider the evidence, to consider the facts, said, no, he is not a member of the Muhajirin. We must remember, during those years, many members of the Muhajirin were being granted asylum. Did he say he was not, or did he say he didn't find him credible as to his evidence presented? He said he did not find his evidence credible. That's the worry that I have in this particular matter, in that I don't think the judge ever said what or what not. He just said, as he understood it and as he listened to the evidence, he was not credible. That is correct, Your Honor. Okay, then you can go on with your story. I mean, we know this story. Right. So I don't know how long you want to use of your 20 minutes to put this story together. But we know this story, and we know what the situation is. But the first decision was really about credibility. It was not about it didn't happen. It was just I don't think what you've said is credible, such that I can rely thereon. So, therefore, I'm not going to. And then the next, if you will, evidentiary hearings where evidence was considered, evidently that particular I.J. felt that it was, given all the totality of what had been presented past as well as now being presented to him or her, I can't remember exactly because it's been, that that was credible. Now it was going to be credible evidence, and that's where they were going, as I understand it. That is correct, Your Honor, and it's important. So it's really a matter of getting more evidence, having that in the record, and also having a prior record which the judge at that point had said, hey, I don't think what you've given me is credible. It may be, but I don't think, it may be that it happened, but I don't think you're credible, so I'm not going to believe it, and then making the decision thereon, isn't that what happened? It is, Your Honor. And that's why I want to, I mean, I hear your story, but I think you're not getting to the story you really want to tell me. It seems to me we've got that down. Yes, Your Honor. I will move on. I just want to point out, as you have noted, in 2003, the testimony was quite radically different from what it was in 1995, and the government relies heavily on the 1995 evidence in his brief. He, at page four, he points out that he was allegedly training people with guns in the mountains. In 2003, he completely, he denies any involvement with any weapons. He says that his grandfather had a gun, so he was aware of how to avoid gunfire. He essentially, the only discussion of guns at all in 2003 was that he told people, hide behind something solid, not something soft. That is the sum total of it. Well, and again, I'm trying to get you to your better, to me, to your argument that you have to make. It seems to me that I owe deference here to those who make the decision beneath me, a deference as to substantial evidence as to what they have put together here. Now, they change on credibility, which is a tough one for me. This judge didn't have any different idea, except they had the same petitioner in front of them again, of what happened in the first hearing than I do, reading it. But he did have the petitioner in front of him, so he had that shot. But again, we're back on substantial evidence. So it seemed to me that there is substantial evidence here that MEK was a Tier 3 terrorist organization. Would you disagree? I would not disagree that looking in hindsight, that the MEK was a Tier 3 organization during those years. Okay, so if we have substantial evidence that the MEK was a Tier 3 terrorist organization, and that's what the BIA suggests, then we've got it halfway, haven't we? Now we're looking at what did he, was he a part? Did he give substantial support? Isn't that the only question left? Well, I respectfully believe there's a couple of questions left. I believe, first of all, that the Tier 3 has to be found in the present tense. Tier 3 specifically says whether or not an individual engages in, in the present tense, as opposed to Tier 1, which can refer back to past tense activities. And I think there's very important reasons, both legal and as a matter of social policy, for that reason. MEK in 2003 was no longer engaging in violent activity. It was no longer at that time a terrorist organization. And, therefore, he could not have been found to have been involved in a Tier 3 terrorist group because the statute specifically says engages in. And Rahaj, I apologize for my pronunciation, Rajabi. Well, don't apologize to me. I'm the worst on that. I know where you're going. Yes. Well, Rajabi, which the government points to, looks at that present tense argument. And they say, no, the alien, the individual does not have to be currently engaging in it. But I think that they're missing the point. The point is that the organization has to still be a terrorist organization. And I think that this is the problem comes, I guess, in that the time when your client was involved in this, was it a terrorist organization. That's what we're really looking at, isn't it? I mean, whether your client can't give support after it's a terrorist organization to a terrorist organization, it only gives support during the time. And I don't find anything in the record that even would suggest he gave support after it was a terrorist organization. We're really looking at, is this a terrorist organization at the time he gave the support? And so, at that point, one looks at, if I understand it, all of the records that would suggest at the time they needed to be a terrorist organization, was it such? And so we can't talk about anything except at the time when, if, in fact, your client gave support, it was a terrorist organization. But I thought we'd kind of come through that. It seems to me there is substantial evidence to suggest it was a terrorist organization during that time. I agree, Your Honor. In the past tense, absolutely, the MEK was a terrorist organization at that time. But what is critical, I believe, in the statute, is that it has to have been a terrorist organization at the time that it was determined that he had engaged in that activity. I appreciate that. But now we then have to determine if he had engaged in activity during the time it was a terrorist organization, as I understand it. Your Honor, if I may have the indulgence of the Court for 90 seconds to tell a story about a client of ours. I'll call her Mrs. I. A 94-year-old woman came into our office seeking adjustment of status. She held out her hand, and she had the marks of being an Auschwitz. She had been in a concentration camp for many years, I believe, five years. But before that, she had provided support to the Jewish defense in Germany fighting the Nazi persecution. Under this definition, she would still today be a terrorist. The importance of making the Tier 3 have to be a current terrorist organization is that politics change. If Tier 3 could still be considered, if you could be indefinitely considered a terrorist for opposing the government, there would be no point in having a Tier 1 or a Tier 2. That's why a Tier 3 has to be that in 2003, when he gave that testimony, actually in 2008 when the IJ determined that he had, it has to have still been an ongoing terrorist organization. Otherwise, it completely nullifies Tier 1 and Tier 2. Why have those two tiers if Tier 3 covers it all? Under Tier 3, any involvement in any kind of organization of two or more people at any time for the rest of eternity, you're considered a member of a terrorist organization. As long as it engages in terrorist activities, right? As long as it is still engaging in terrorist activities, present tense, still currently engaging in terrorist activities. I see your argument. Thank you, Your Honor. Any other? Yes, Your Honor. I believe that the immigration judge did not make a Tier 3 finding. He did not make a clear finding, and therefore, the petitioner was never put on notice that he could rebut that with the argument that he, A, did not provide material support, which I don't believe he did. I do not, I believe under, well, Bannister. So you're saying that the BIA had no authority to make that determination? I don't believe so, Your Honor. You think that the BIA could not determine that that was a terrorist organization? I understood that this was a legal conclusion, that they didn't need to take evidence therefore. Your Honor, I will agree. Would you respond to that? Yes, Your Honor. I will agree with that. As a de novo matter, they could make that legal decision. They could determine whether that's a terrorist organization, correct? Yes. All right, so then if they could, then we're still back to the same old thing. Is there substantial evidence to support the agency's determination that your client provided support to the terrorist 3? I do not believe that there is, but at a minimum, it should have been remanded to the immigration judge in order to allow him an opportunity to rebut those arguments. Let me ask you another question. Do we have any jurisdiction over this issue? Yes, Your Honor, I believe that you do. Why? We have no jurisdiction to review the agency's determination that an applicant is ineligible for asylum based on terrorist activity. That's under 8 U.S.C. 1158b2a. What gives us the authority to do this? What is the basis of us exercising our jurisdiction over this determination? Isn't he now eligible for deferral of removal? Your Honor, he currently does have deferral of removal under the Convention Against Torture. So he's got everything that we have allowed in Haley. I'm not sure that's the way you say it, Hile, Haley, whatever, versus Holder. He's got all the things that we've presently allowed. He is also, I believe, Your Honor, eligible for adjustment of status. He's married to a United States citizen who he's been married to for 13 years. He's been in the United States for 30 years. So our total determination then is we have jurisdiction in your mind, though you don't have the statute in front of you, and it's all a substantial evidence determination? I believe it is primarily a substantial evidence determination, Your Honor, but I also believe that it's a question of law. I believe that this Court needs to look at that Tier 3 terrorist designation and determine whether or not it can apply if the party is no longer currently engaging in terrorist activity. So the question of law is as to the terrorist organization itself. As to the terrorist himself, is that also a question of law? I believe that that's a factual determination, but I believe that the question of law is whether or not Tier 3 is being properly applied in this case. And you don't think the I.J. found him to be a terrorist? I don't believe that he found it on proper basis because he looked back to that 1995 testimony, the testimony that was found to be completely incredible. And based on that, he put together some information about training with guns in the mountains, which was completely refuted by the 2003 testimony in which he said, no, I never had any involvement with weapons. My sole knowledge is because my grandfather had a weapon. Counsel, did you want to save some time? Yes, Your Honor. I thought you said at the start you would save five minutes. Yes, Your Honor. Thank you. Thank you, Judge Gould. May it please the Court. I'm Lyle Jentzer. I'm from the Department of Justice, Civil, Office of Immigration Litigation. I represent the government today. There are a lot of issues in this case, but essentially Congress has stated in the Patriot Act that if you participated in terrorist activity, with a group that you should have known, you reasonably should have known was a terrorist group, prior to its designation in 1997 by the Secretary of State, then you are, you have engaged in terrorist activity. That is what the statute says, and that is Patriot Act 411C3B2. The petitioner has totally ignored that statute in her determination. Now, why is that important? Under petition ---- Did you want to ask him a question? I'm sorry, Your Honor. I wanted to ask about her Rule 28J letter, but I thought you had finished your sentence. Your Honor, I'm at your convenience, Your Honor. I don't want to ---- if you want to finish your thought, go ahead. But there was a letter. Have you read the letter, May 29th? Petitioner's 28J.  Yes, Your Honor. I'm familiar with it. I have gotten it. And she says that the ---- in effect, he would ---- if I read it correctly, he could be admitted right now based on the change by action taken by the Secretary of State and the Attorney General. Actually, that's unfortunately for Petitioner incorrect. Okay. If you take a look at what the statute says, actually it's not a statute, it's a decision. They provide that he is eligible provided he has not provided material support in the form of military training as defined in Section 233-9DC1 of Title 18. That reads, as defined in this ---- as used in this section, the term military type training includes training in means or methods that can cause death with serious bodily injury, destroy or damage property, or disrupt services to critical infrastructure, or training on the use, storage, production, or assembly of any explosive, firearm, or other weapon. That is precisely what the immigration judge found. Therefore, he doesn't qualify for the exception that Petitioner has said he does. It's just not there. More than that, though, or in line with that, that is only for DHS. The Attorney General has no authority in that regard and neither does the court. That's why a remand would not be viable in this case because to remand it to the IJ, who is part of Department of Justice, not part of Department of Homeland Security, he would just have to throw up his arms and say, nothing I can do. Now, what they're saying is he did not make appropriate findings. But that's a matter, as Judge Smith has said, of substantial evidence. It is interesting to note that Immigration Judge Banks, who did this several times, said to the parties, I'm going to look at the whole record. Is that acceptable to everybody? There was no objection. Nor was there ever any appeal to that to the BIA that he was going to do that, so it's not exhausted. Next, and importantly, when Judge Banks originally granted adjustment of status, the Department of Homeland Security said, we want to appeal that to the Board of Immigration Appeals. And that's on the record that AR-290 is going to be their appeal brief. What that appeal brief said was that the Immigration Judge Banks has it wrong. Under the Patriot Act, the MEK was a Tier 3 terrorist organization in the 1970s, at the very time he provided the assistance. And therefore, under the Patriot Act, he is inadmissible. And if he's inadmissible, he is unable, or ineligible, I should say, to receive adjustment of status. Now, the government, the Department of Homeland Security, also stated in his brief that the way it has to work when you're a Tier 3, you have to show, one, that you were not reasonably aware that it was a terrorist organization, and there's an exception to it, that the petitioner, unlike in a Tier 1 designation, can state he has to show by clear and convincing evidence that he was unaware or reasonably should have been unaware of the terrorist, that the group was a terrorist organization at the time he provided material support. That totally put petitioner on notice as to what the government's theory was and what he had to show. Now, the Immigration Judge asked the parties, do we need any more testimony? To some extent, they said no, but he did take some testimony, and in that testimony, the petitioner testified, I was not aware. I didn't know about this. The Immigration Judge considered all the evidence, including from 1995, and he concluded that he reasonably should have been aware. Now, the linchpin of this is that in 1995, well, first of all, in his asylum application that he filed, he said, I was fighting for the MEK, training and weapons. In 1995, he didn't contradict that in his testimony. He admitted it again and said, yes, I was responsible. I was a training officer. We trained in the hills outside of Tehran because we couldn't do it in Tehran, and we trained in weapons for fighting. Now, if you look at that, what possible purpose could there have been for training in weapons if, as petitioner alleged in 2003, it was a peaceful organization? The two great icons of nonviolent activities in the 20th century, Martin Luther King and Mahatma Gandhi, they never trained their followers on the use of weapons. The use of weapons is totally inconsistent. Also, when he was asked, was the MEK peaceful during this time, yes, I believe it was. Now, you look at that, if it was peaceful, then why were you training in weapons to fight? It's inconsistent. The immigration judge considered all of this, plus the finding, or plus the, I should go, the statement that, yes, we were peaceful up until the revolution. And then after, you know, we cooperated with the Khomeini revolution, and after it was over, that's when the MEK disagreed with Khomeini and disagreed with the Islamists and became violent. The biggest problem that I have with the government's case here is that the government, on one hand, says this guy is totally incredible, and therefore he's not getting any relief. And then when the government wants to keep him, wants to do what they have to do to keep him from getting the relief that he really seeks, then they change stripes. And they say now he's not only not credible, he's credible, and we're going to believe everything he said back there when he was in 1995 when we said he was incredible. And now here we are, we're going to rely not only on the evidence he's said now, credible, we're going to rely on all this other evidence where he was incredible in presenting it, and we're going to hash it all together and now put our case together. All right, several things. I tried to give you several things, because that's the biggest problem for me. I understand, and the court has no jurisdiction to even consider that, because it wasn't raised on the appeal to the board. He never put the board on notice. But also importantly, as Yorana himself pointed out, the original IJ did not find that he was not a member of the MEK. He found he was incredible. Why? Because during the period he said he was in jail, he also said he was, it's either in Paris or Sweden. That was the basis of the finding of lack of credibility, not that he hadn't trained in weapons. You won't find in the IJ decision that he ever said that. Had he not been credible, had he totally lied about his MEK involvement, if you think about it, that was his only basis for getting asylum. That would have been a frivolous asylum application. He lied to get an immigration benefit. The immigration judge didn't go that far. He just said, I can't reconcile all the different times you've given me. You say you were in Paris, you say you were in jail. I don't know what to believe. Therefore, I'm not going to give you the relief. Years later, and we've got several hearings later, he again confirms he was in Iran at the time, that he was doing something with weapons. Now, we understand he tried to back off as he realized the problem, that he placed himself in the untenable position. But he still said guns. And the immigration judge turned around and said, Well, the fact that you're admitting you were in the MEK is a statement against interest. And he credited that statement. He looked at all of it. He found that it was credible. Now, in response to one of Your Honor's questions, as to the asylum claim, there is no jurisdiction because it's disputed facts. It's not a mixed question of law. It can't be considered. Withholding, however, does not have the same restriction. Withholding under cap. That's right. So, Your Honor, the court would have jurisdiction to consider the issue there. But it would be What's your cite for that? Oh, if you just look at 1231. Okay. There's no restriction. Under 1158, the provision that you cited, there's a very specific provision that states the court has no jurisdiction. Yes. Later on, I believe it's pronounced Ramadan, this court said if it's a mixed question of law and fact, which is the facts are undisputed and we're just applying the law, we have jurisdiction. We don't have that here. That's why asylum is out. But there is no such restriction. The statute in withholding does not state that. So you would have jurisdiction there. If we look at whether the petitioner provided material support to the tier three terrorist organization, that's a substantial evidence review. That is. Are you still suggesting that the petitioner failed to exhaust that? Yes. If you take a look at what he said. But the BIA, the BIA addressed it, didn't it? Yes, it did. And so because the BIA addressed it, it doesn't seem to me that we could get out of it for failure to exhaust it. Well, the problem is the petitioner never put the board on notice that he was contesting. Well, so what? The BIA addressed the issue. All right. Let's back off a bit and see what we can't address. He never said the BIA's findings of fact were erroneous, and the board specifically found that. He never said, I was not given an opportunity to rebut. So all that, and that cannot be considered. He has not exhausted that. But even assuming exhaustion, it's still a substantial evidence test, other than whether the MEK was a terrorist organization in the 1970s. That's substantial evidence. We urge the court to look at the record at page 1058, where they have the list of what the MEK did. The IJ specifically said it was engaged in violent activities, and you should have known it was engaged in violent activities, and the board affirmed that. Now, the fact that the IJ, even if he didn't make a legal determination that it was a Tier 3, that doesn't matter because the board has jurisdiction to review that de novo, and the board specifically found it was a Tier 3 terrorist organization. That is sufficient. Any other comments? No. I think I can save the Court some time, unless this Court, Judge Gould, has any other questions. Judge Gould, any other questions? I have no questions. Thank you. All right. Thank you, Counselor. We appreciate your argument. Thank you, Your Honor. You have a bit of time left, I think. Thank you, Your Honor. Judge Gould helps you save. Thank you, Your Honors. First, I'd like to note that although nobody objected, of course, to the record from 1995 being part of the record, it is part of the record by the nature of it, nobody said that it could be found credible. The judge who heard the case in 1995 specifically found the petitioner not credible. On all of those points, he was the individual who saw the evidence, and it was determined to be so not credible that the BIA, even when faced with the fact that the judge did not allow in an arrest record, said there's no prejudice here because it was so ridiculous that he was a member of the MEK. We don't believe a word of it. Now, as you say, it comes back and the tide has turned, and now that MEK members are not getting asylum but, in fact, are being denied admissibility to the United States, the government completely changes its story and says, oh, no, no, no, we believe him now. He was a member of the MEK when, in 1995, they specifically said he was not. A second point is that he's denying a petitioner the opportunity to bring up the point that he didn't have the opportunity to rebut. He was not put on notice of that opportunity to rebut the Tier 3 finding because the IJ didn't make a Tier 3 finding. It wasn't until the board that a Tier 3 finding was made, and in our brief we absolutely did ask for the opportunity for the case to be remanded so that he would have the opportunity to rebut it. And in closing, I believe that everything aside, it should certainly be remanded at a minimum under the new regulation promulgated on February 5th of this year for a consideration of whether or not it was significant or insignificant material support in the fact that the activities that were determined to be credible, the passing out of flyers, could certainly be determined to be insignificant material support and should therefore be remanded for the fact finder to determine. Thank you. Thank you for your argument. Thank you. We appreciate all of you for your arguments. Thank you very much. Case 10-73588. Yes, the petitioner versus holder is submitted. And we will also submit the USA versus Jimenez-Rodriguez, Jason De La Torre. Those are cases 11-50475 and 11-50477 submitted on the briefs. And the United States versus Edgar Omar Keller-Canal, case 12-50122 is also submitted on the briefs. We thank you all for your argument today. This court will now stand adjourned.
judges: Korman, GOULD, SMITH